UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NOAA FISHERIES, et al.,<br><br>Defendants. | Case No. 4:21-cv-00345-KAW<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY**<br><br>Re: Dkt. No. 25 |

On July 12, 2021, Defendants NOAA Fisheries, Chris Oliver, Karl L. Schultz, and U.S. Coast Guard filed a motion to stay the case on the grounds that reinitiated consultation under the Endangered Species Act, 16 U.S.C. § 1536(a)(2), is ongoing between the U.S. Coast Guard and the National Marine Fisheries Service related to the Coast Guard's codification of Traffic Separation Schemes.

On August 19, 2021, the Court held a hearing, and, after considering the parties' moving papers and arguments made at oral argument, and for the reasons set forth below, DENIES Defendants' motion to stay.

### I.  BACKGROUND

On February 23, 2017, the National Marine Fisheries Service ("NMFS") issued a Biological Opinion ("BiOp") regarding the U.S. Coast Guard's ("USCG") codification of Traffic Separation Schemes ("TSS") near the port of Los Angeles/Long Beach and the Santa Barbara Channel and the port of San Francisco. (*See* Compl., Dkt. No. 1 ¶¶ 1-2; 2017 BiOp,[1] Decl. of

---

[1] While Defendants improperly attached documents to a supporting declaration rather than filing a formal request for judicial notice, the Court will take judicial notice *sua sponte* of the 2017 BiOp, because it was referred to in the complaint and is incorporated by reference. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Moreover, the 2017 BiOp is a public record subject to

Frederick H. Turner, Dkt. No. 25-1 ¶ 5, Ex. B.)  The TSS governs the shipping lanes vessels used to approach the ports, which Plaintiffs allege result in significant numbers of fatal ship collisions ("ship strikes") with whales, leatherback sea turtles, and other species protected by the Endangered Species Act ("ESA"). (Compl. ¶ 2.)

On March 2, 2020, Plaintiffs Center for Biological Diversity and Friends of the Earth gave Defendants 60 days' notice of their intent to sue for ESA violations, and provided supplemental notice of their ESA violations on August 18, 2020. (Compl. ¶ 11.)  On January 14, 2021, Plaintiffs filed this lawsuit, which seeks declaratory and injunctive relief that the 2017 BiOp is unlawful and that NMFS and USCG are in violation of the ESA, an order compelling the agencies to complete reinitiated consultation within six months, and the implementation of measures (such as mandatory speed reductions) intended to reduce ship strikes pending completion of such consultation. (Compl. ¶ 9.)

On April 29, 2020, USCG requested reinitiation of consultation with NMFS, under ESA Section 7(a)(2) and the ESA implementing regulations, based on new scientific literature and the identification of two newly listed species. (Compl. ¶ 140.)  Reinitiation of consultation will eventually result in the issuance of a new BiOp by NMFS, as the consulting agency. *See* 50 C.F.R. § 402.14(h).  A BiOp includes the agency's opinion on whether the proposed action is likely to jeopardize the continued existence of the species or result in the destruction or adverse modification of its designated critical habitat. *See id.*  If the consulting agency reaches a no-jeopardy decision, but the action will result in "take" of a listed species, the agency must issue an incidental take statement ("ITS"). *See* 16 U.S.C. § 1536(b)(4)(i)-(ii).  The 2017 BiOp determined that the TSS lanes resulted in no incidental take, which resulted in no ITS. (*See* Compl. ¶ 114.) Plaintiffs contend that the "no take" finding is based on an analytically flawed approach that compared the TSS lanes to the "no-lane scenario," by considering how many protected species would be harmed by the use of the TSS lanes versus the number of species harmed if there were

---

judicial notice under Federal Rule of Evidence 201. The Court declines to take judicial notice of the other documents attached to Mr. Turner's declaration, because they have no bearing on the merits of the instant motion.

1   no shipping lanes. (*See* Compl. ¶¶ 104-105.) Plaintiffs contend that this was a false comparison,

2   because there are always shipping lanes, that resulted in NOAA Fisheries concluding that the TSS

3   designations would decrease exposure for whales and leatherback sea turtles. (Compl. ¶ 105

4   (citing 2017 BiOP at 88).)

5     On July 12, 2021, Defendants filed a motion to stay the proceedings for 17 months to

6   provide the agencies time to finish the reinitiated consultation and issue a new BiOp. (Defs.' Mot.,

7   Dkt. No. 25.) On July 26, 2021, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 27.) On

8   August 2, 2021, Defendants filed a reply. (Defs.' Reply, Dkt. No. 28.)

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to stay proceedings is entrusted to the discretion of the district court. *See id.* at 254-55. In deciding whether to stay proceedings pending resolution of another action, a district court must weigh various competing interests, including the possible damage which may result from granting a stay, the hardship a party may suffer if the case is allowed to go forward, and "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall,* 300 F.3d 265, 268 (9th Cir. 1962)). The burden is on the movant to show that a stay is appropriate. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997).

## III. DISCUSSION

Defendants argue that staying the case pending the completion of the reinitiated Section 7 consultation is appropriate, because the stay will not prejudice Plaintiffs, it will avoid hardship to Defendants, and it will preserve the Court's resources. (Defs.' Mot. at 6-9.)

### A. Whether a stay will prejudice Plaintiffs.

Defendants argue that the stay would not prejudice Plaintiffs, because USCG is already conducting its ESA analysis and preparing a reinitiation consultation package for NMFS. (Defs.' Mot. at 7.) USCG estimates that its work will take 5 months, while NMFS expects that the BiOp

United States District Court
Northern District of California

will take 12 months to complete. *Id.* At the hearing, Defendants argued that a stay is the fastest way for the agencies to complete reinitiation, which is part of Plaintiffs' requested relief. Finally, Defendants argue that the stay will allow NMFS to consider Plaintiffs' petition regarding vessel strike reduction measures, including vessel speed regulations and routing measures to reduce the risk of vessel strikes on large whales. (Defs.' Mot. at 7.)

In opposition, Plaintiffs contend that a 17-month stay would harm their interests in the preservation of endangered species, because "ship strikes would continue to kill endangered whales and sea turtles within USCG designated shipping lanes under a biological opinion that, among other deficiencies, does not contain an incidental take statement." (Pls.' Opp'n at 9-10.) At the hearing, Plaintiffs further explained that they believe that the current reinitiation process will have a similar result as the 2017 BiOp, because the 2017 BiOp's failure to include an incidental take statement ("ITS") was based on the faulty premise that the number of ship strikes would be the same in the absence of TSS lanes. Since a valid ITS is required to describe "reasonable and prudent measures" necessary to minimize the anticipated take, the Court finds that the failure to implement even interim harm reduction measures is potentially harmful. *See* 16 U.S.C. § 1536(b)(4)(C)(ii) (ITS must specify reasonable and prudent measures to minimize impact on protected species). For that reason, the Court agrees with the reasoning in *Center for Biological Diversity v. Ross*, in which the district court found that "NMFS's alleged ongoing violations of the ESA … would continue unabated during the pendency of a stay, further endangering North Atlantic white whales" and would harm Plaintiffs' interests in conserving the whale population. 419 F. Supp. 3d 16, 20 (D.D.C. 2019). Indeed, the same harm would be present here.

Finally, the Court is not convinced that the length of time Plaintiffs took to file this lawsuit undermines the asserted harm to Plaintiffs. (*See* Defs.' Mot. at 8.) Plaintiffs gave notice to Defendants in March 2020 and supplemental notice in August 2020 due to new scientific information that was not available until 2019 and 2020, respectively. (*See* Compl. ¶¶ 117-121; Pls.' Opp'n at 13.) Furthermore, Plaintiffs explain that they were uncertain as to whether NMFS had agreed to USCG's reinitiation and sought additional details regarding interim measures to reduce ship strike risk during the pendency of consultation, which is why they provided

4

1  supplemental notice rather than immediately filing suit. (Pls.' Opp'n at 13.) Thus, there was no
2  significant delay.
3      Accordingly, the Court finds that the risk of ship strikes to protected species, particularly
4  given the absence of any reduction measures, would result in harm to Plaintiffs during the
5  pendency of the requested stay.

    **B.    Whether a stay would avoid hardship to Defendants.**

7      Defendants argue that they would suffer hardship if agency staff were required to assist in
8  defending this lawsuit rather than working on the reinitiated consultation. (Defs.' Mot. at 7; Defs.'
9  Reply at 9-10.) In opposition, Plaintiffs argue that the claimed hardship of staffing shortages are
10 self-created, because the agencies have decided not to prioritize the ship strike issue. (Pls.' Opp'n
11 at 14-15.) Defendants disagree with this assertion. (Defs.' Reply at 9-10.)
12     In support of its position, Defendants rely on *Natural Resource Defense Council v.*
13 *Kempthorne*, No. 1:05-CV-01207 LJO, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015), in
14 which the court granted a six-month stay because the "Defendant federal agencies would be
15 required to dedicate staff time and resources to litigating the merits of Plaintiffs' claims, [and]
16 those resources could be re-directed to other efforts, including re-consultation." (Defs.' Reply at
17 10.) *Kempthorne*, however, differs in many respects from the instant case. First, *Kempthorne*
18 involved an invalidated BiOp, whereas Defendants in the instant case have not conceded that the
19 2017 BiOp is invalid. *See* 2015 WL 3750305, at *8. In fact, at both the hearing and in their
20 briefing, Defendants re-committed to their position that the 2017 BiOp was not flawed by stating
21 that, "[i]n the 2017 BiOp, NMFS reasonably determined that the proposed action would not
22 jeopardize ESA-listed species and that take was not reasonably certain to occur." (*See* Defs.'
23 Reply at 4.) Second, the *Kempthorne* stay was only six-months, whereas Defendants seek a 17-
24 month stay, which they concede provides NMFS with more time to produce the BiOp than it
25 would otherwise be entitled under the existing regulations. (*See* Defs.' Mot. at 7 n. 4.) Finally, as
26 Plaintiffs point out, Defendants fail to adequately explain why they have not made more progress
27 on the consultation work since USCG requested reinitiation in April 2020. (Pls.' Opp'n at 12.) At
28 the hearing, Defendants clarified that they were making other progress as evidenced by the two

5

1  proposals USCG submitted to the International Maritime Organization ("IMO") related "to
2  providing additional protection for endangered blue, humpback, and fin whales off the cost of
3  California by significantly reducing the likelihood of ship strikes to whales…." (*See* Def.'s Mot. at
4  5.) Plaintiffs acknowledged that the IMO proposals are important but argued that they are separate
5  and distinct from the section 7 reinitiation, and the Court agrees. This distinction is evident by
6  Defendants' supporting declaration from Diane Rusanowsky, which clearly states that the package
7  required to reinitiate consultation has not been completed. (*See* Decl. of Diane Rusanowsky,
8  "Rusanowsky Decl.," Dkt. No. 25-2 ¶ 6.) Specifically, Ms. Rusanowsky's declaration explains
9  that there has been no review of Automatic Identification System ("AIS") data. *Id.* Further,
10 despite Defendants' claimed staffing shortages and Ms. Rusanowsky's immense workload, the
11 onus appears to be on other USCG employees, rather than Ms. Rusanowsky, to "examine[],
12 clean[], and evaluate[] the AIS data" before she is able to "extrapolate from th[is] data how vessels
13 are most likely to approach the TSS areas and begin the ESA effects analysis." (Rusanowsky Decl.
14 ¶¶ 8, 13-15.) Consequently, while Defendants urged the undersigned, at the hearing, to revisit the
15 supporting declarations as evidence of the efforts that have been undertaken thus far, in so doing,
16 it is apparent that little progress has been made on the reinitiation in the intervening 16 months.
17 　　　　The Court is similarly unpersuaded by Defendants' reliance on *South Yuba City Citizens*
18 *League v. National Marine Fisheries Service,* No. 2:13-CV-00042-MCE, 2013 WL 4094777 (ED.
19 Cal. Aug. 13, 2013), which they cited for the first time in their reply brief. (Defs.' Reply at 6, 10-
20 12). In *South Yuba*, the Government had committed to a reinitiation schedule shortly after the
21 lawsuit was filed, the agencies had made progress on reinitiation, there were interim mitigation
22 measures in place to protect the species, and the two dams at issue had been in place for more than
23 70 years, so the effects on the protected species had been ongoing for decades. *S. Yuba,* 2013 WL
24 4094777, at *7. The district court reasoned that the length of time the dams had been in place
25 made it difficult for the plaintiffs to establish irreparable harm during the pendency of the 10-
26 month stay. *Id*. at *8. None of these considerations exists in the present case, so the Court finds
27 *South Yuba* factually inapposite. Finally, in granting the stay, the *South Yuba* court set relatively
28 short deadlines for the reinitiation package to be submitted to NMFS and required that the new

1   BiOP be finalized approximately nine months from the date of the order. *Id.* at *11. Here,
2   Defendants reiterated their position that they required the entire 17 months complete the
3   reinitiation, presumably because there has been no appreciable progress since April 2020.
4       Perhaps unsurprisingly, the Court is persuaded by the cases cited by Plaintiffs in which
5   motions to stay were denied. *See, e.g., Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d at 22
6   ("NMFS does not explain how defense of this suit, which falls largely to lawyers at the
7   Department of Justice, will divert substantial NMFS resources.") Defendants attempt to
8   distinguish the instant case from *Ross* by providing declarations from agency personnel, but they
9   fail to adequately explain why the defense of this lawsuit will divert *substantial* resources from the
10  reinitiation. (*See* Defs.' 10.) Simply impairing the agencies' ability to complete the consultation is
11  not enough, particularly when they are requesting more time than afforded by the regulations. (*See*
12  Defs.' Reply at 7.) Additionally, as discussed above, the declarations do not support Defendants'
13  claim that the agencies have made any tangible progress since USCG requested reinitiation.
14      Accordingly, Defendants have not made the requisite showing of clear hardship or
15  inequality to stay the proceedings.

    **C.    Judicial economy**

17      Defendants argue that the issuance of a new BiOp would likely resolve most of Plaintiffs'
18  claims. (Defs.' Mot. at 9.) Specifically, Defendants argue that Plaintiffs' claims regarding the
19  2017 BiOp would be moot due to a superseding BiOp, and the claims about the failure to reinitiate
20  would be moot due to the completion of the reinitiation. *Id.* While the Court's limited judicial
21  resources would undoubtedly be preserved during the pendency of the stay, the Court is not
22  convinced that it should exercise its discretion to the stay the case for such a long period of time
23  given the risk to ESA-listed species when the existing BiOP failed to quantify or authorize any
24  take, even though it is now undisputed that takings are occurring. (*See* Pls.' Opp'n at 15.) The fact
25  that Defendants have doubled down on their claim that the 2017 BiOp was not flawed does not
26  engender much confidence that the reinitiation will result in a different outcome and would,
27  instead, merely kick the can down the proverbial road. (*See* Defs.' Reply at 4.)
28      Accordingly, the Court finds that the interests of judicial economy do not justify the

United States District Court
Northern District of California

1  requested stay.

## IV.  CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion to stay.

IT IS SO ORDERED.

Dated: August 23, 2021

_____
KANDIS A. WESTMORE
United States Magistrate Judge

8